# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RHONDA R. WORKS on behalf of her minor child, A.R.W., | : : | Case No. 3:10-cv-00460 |
| Plaintiff, | : | District Judge Walter Herbert Rice Magistrate Judge Michael J. Newman |
| vs. | | |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : : | |
| Defendant. | | |

## REPORT AND RECOMMENDATION[1]

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g). Plaintiff Rhonda R. Works ("Plaintiff"), brings this case *pro se* on behalf of her minor child, A.R.W. ("ARW"), challenging the Administrative Law Judge's ("ALJ") determination that ARW is not "disabled," and therefore not entitled to child Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #10), and the record as a whole.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed an SSI application on ARW's behalf on January 11, 2006, alleging that ARW began suffering from a "disability" within the meaning of the Social Security Act on June 25, 1999.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

Tr. 49-52. At the time she filed the application, Plaintiff reported ARW to be disabled due to asthma and a bladder infection. Tr. 60.

Following initial administrative denials of ARW's SSI application, a hearing was held before ALJ David A. Redmond on September 8, 2008. Tr. 566-78. On October 31, 2008, the ALJ issued an unfavorable decision. Tr. 13-23. The ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of the decision, were as follows:

> 1. The claimant was born on March 8, 1993. Therefore, she was a school-age child on January 11, 2006, the date the application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972).
>
> 3. The claimant has the following severe impairments: asthma and mild scoliosis (20 CFR 416.924(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).
>
> 5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).
>
> 6. The claimant has not been disabled, as defined in the Social Security Act; since January 11, 2006, the date the application was filed (20 CFR 416.924(a)).

Tr. 16-22.

The Appeals Council thereafter denied Plaintiff's request for review, tr. 5-7, making the decision of the ALJ the final administrative decision of the Commissioner. On Appeal, Plaintiff claims that ARW should be found disabled because she continues to have "medical issues," such as back pain, asthma, pre-hypertension, and chronic migraine headaches. (Doc. #9).

**B. ARW's Vocational Profile and Testimony**

ARW was fifteen years old at the time of the administrative hearing. Tr. 570. At the hearing, the ALJ informed Plaintiff of ARW's right to be represented by counsel. Tr. 568-69. Plaintiff articulated her understanding of that right, and waived it both orally and in writing. *Id*.; Tr. 45.

At the hearing, the only people to testify were Plaintiff and ARW. Plaintiff testified that ARW was out of her custody for a period of four years, but returned on June 16, 2006. Tr. 570. Plaintiff estimated ARW to be approximately 4'9" in height and 200 lbs in weight. *Id*. At the time of the hearing, Plaintiff was home-schooling ARW. Tr. 571. According to Plaintiff, ARW was doing "pretty good" with her homework. Tr. 572. Plaintiff testified that ARW's biggest problems were her difficulties breathing, back pain, and gastritis. *Id*. Plaintiff further testified that ARW took four prescription medications, which caused her drowsiness. *Id*.

Plaintiff estimated that ARW could tolerate being on her feet for approximately five or six hours at a time. Tr. 573. ARW helps Plaintiff with household chores by doing light sweeping and cleaning the residence. *Id*. Plaintiff testified that ARW has a number of friends who she regularly visits, and who visit her. *Id*. Plaintiff further testified that ARW likes to go shopping at the mall and roller skating with her friends. *Id*.

During a typical day, ARW gets up at 9:00 a.m. and begins school at 10:00 a.m. Tr. 574. Because she is home-schooled, ARW works on a computer approximately five hours per day. *Id*. After school, ARW generally likes to go to the park or to the mall with her friends. Tr. 575.

ARW testified that her biggest problem was breathing. Tr. 576. ARW told the ALJ that her breathing problems would flare up while sleeping, in the mornings, and occasionally when trying

3

to run. Tr. 577. ARW testified that she roller-skates every other weekend with friends, and generally brings her inhaler in case her breathing problems flare-up while she is skating. *Id.* ARW testified that she takes medication two or three times a day, or as needed. Tr. 578.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence and if the correct legal criteria were employed by the ALJ. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Id.* As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

### B. Childhood Disability Standard

Section 1614(a)(3)(C)(i) of the Social Security Act provides that an individual under the age of eighteen is disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Pursuant to 20 C.F.R. § 416.924, the ALJ must apply a three-part test to evaluate a child's disability:

> 1) A child will be found "not disabled" if he engages in substantial gainful activity. If the child is not engaging in substantial gainful activity, the analysis proceeds to the next step. 20 C.F.R. § 416.924(b).
>
> 2) A child will be found "not disabled" if he does not have a severe impairment or combination of impairments. If the child has a severe impairment or combination of impairments, the analysis proceeds to the next step. 20 C.F.R. § 416.924(c).
>
> 3) A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P. Appx. 1. If not, then the child is not disabled. 20 C.F.R. § 416.924, § 416.925, and § 416.926.

Thus, a child may be found to be disabled if she has "a severe impairment or combination of impairments that does not meet or medically equal any Listing . . . [but] results in limitations that functionally equal the Listings." 20 C.F.R. § 416.926a(a).

A child's functioning is assessed by considering how the child functions in her activities in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in at least two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation results if the child's impairment(s) "interferes seriously" with the child's "ability to independently initiate,

5

sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation is one that is "'more than moderate' but 'less than extreme.'" *Id*. An extreme limitation exists when a child's impairment(s) "interferes very seriously" with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). "'Extreme' limitation also means a limitation that is 'more than marked.'" *Id*.

## III. PLAINTIFF RHONDA WORKS' STANDING TO BRING THIS ACTION *PRO SE* IN FEDERAL COURT

A preliminary issue exists as to whether Plaintiff Rhonda Works, ARW's mother, can bring this action on behalf of ARW in this Court. Ms. Works brought this action on ARW's behalf without an attorney.[2] The docket sheet reflects that this action was brought by Rhonda Works on behalf of ARW, "who is a minor," and the complaint and other papers in this action were signed by Ms. Works. *See* Docs. 1, 2, 4, and 9.

Although neither party has addressed the issue of standing in any filing in this case, the Court has an obligation to raise standing issues *sua sponte*. *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 109 (2001). As a general rule, a parent or legal guardian cannot represent a minor or incompetent litigant in federal court proceedings without an attorney. *See* Fed. R. Civ. P. 17(c). While a litigant has the right to act as his or her own counsel, *see* 28 U.S.C. § 1654, a non-attorney parent is generally not permitted to represent the interests of his or her minor child in federal court. *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002); *see also Meeker v. Kercher*, 782 F.2d 153,

---

[2]The administrative record includes letters sent by Legal Aid of Western Ohio, Inc. to Plaintiff regarding their inability to reach Plaintiff by telephone regarding possible representation in this matter, as well as a letter from a private attorney who handles children's Social Security cases. Tr. 512-13, 527. It appears that no attorney has made an appearance at any stage of these proceedings.

154 (10th Cir. 1986). The Sixth Circuit has held that "parents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative." *Shepherd*, 313 F.3d at 970; *see also Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) (noting "it is not in the interests of minors or incompetents that they be represented by non-attorneys").

This rule, however, has been relaxed by several other Circuits in the narrow field of Social Security appeals brought by a minor child's parent. As the Fifth Circuit observed in *Harris v. Apfel*, 209 F.3d 413 (5th Cir. 2000):

> We agree that the rights of minors in SSI appeals can be adequately protected without legal counsel -- the proceedings essentially involve the review of an administrative record. We are persuaded that prohibiting non-attorney parents from proceeding *pro se* in appeals from administrative SSI decisions, on behalf of a minor child, would jeopardize seriously the child's statutory right to judicial review under § 405(g).

*Harris*, 209 F.3d at 417. *See also Machadio v. Apfel*, 276 F.3d 103, 107 (2d Cir. 2002)(holding that "a non-attorney parent who brings an SSI appeal on behalf of his or her children has a sufficient interest in the case and meets basic standards of competence...may bring an action on behalf of his or her child without representation by an attorney"). Courts which have addressed this specific issue have noted that non-attorney parents may represent their children in administrative proceedings before the Commissioner, *see* 20 C.F.R. § 416.1505(b), and have also considered persuasive the fact that custodial parents often have a personal stake in their children's SSI litigation because the parents must bear the additional maintenance expenses associated with their children's medical conditions. *Id.*; *see also Harris*, 209 F.3d at 416-17.

In this case, the Court concludes that the same policy considerations which allow a parent to file a *pro se* Social Security Appeal on behalf of a minor child apply in this case. As ARW's

7

mother, Ms. Works has presumably borne much of the costs associated with ARW's medical treatments documented in the record. Moreover, it appears as if Ms. Works made an effort to obtain counsel, but was unable to do so. Accordingly, the Court will not recommend dismissal of this action on standing grounds, i.e. that Rhonda Works has brought this *pro se* Social Security Appeal in her capacity as ARW's mother and without an attorney.

## IV. OPINION AND ANALYSIS

Because Plaintiff is proceeding *pro se* and does not identify any specific errors within the ALJ's decision in her concise Statement of Errors, the Court assumes and liberally construes her Statement of Errors to mean that she is challenging the decision of the ALJ as being unsupported by substantial evidence. The Court has carefully reviewed the ALJ's decision to determine whether the ALJ's critical findings of fact were made in compliance with the applicable law and whether substantial evidence in the record supports those findings. Based upon its review, the Court finds that the decision of the ALJ is supported by substantial evidence, and recommends that the ALJ's decision be affirmed.

### A. Substantial evidence supports ALJ's finding that ARW's impairments did not meet or functionally equal the Listings.

Pursuant to 20 C.F.R. § 416.924, the ALJ properly applied the three-part analysis in evaluating ARW's childhood disability claim. Ultimately, the ALJ found that although ARW had severe impairments of asthma and mild scoliosis, those impairments did not meet or functionally equal any Listing. Tr. 16-22. The ALJ appropriately found that the record and testimony failed to corroborate the severity of ARW's alleged limitations and, in fact, showed that her symptoms responded to treatment.

8

ARW's primary impairment is asthma. The Listing for asthma is found at 103.03B. In order to meet the requirements of this Listing, a child claimant must show:

> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks[.]

Listing 3.00C defines "asthma attacks" as:

> prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

In analyzing whether the Listing for asthma was met or functionally equaled, the ALJ first considered ARW's medical records. While the administrative record contains treatment records from twelve of ARW's visits to the emergency room, the evidence reflects that ARW did not suffer "asthma attacks" with the frequency mandated by the Listing. *See* tr. 182-85, 187-91, 429-30, 432-33, 434-35, 437-42, 452-55, 474-78, 489, 493-95, 506-08. For instance, the twelve emergency room visits, as documented in the record, occurred over a period spanning from July 1999 to May 2007 -- not over a period of "12 consecutive months" as required by the Listing. *Id*. Moreover, not all of the episodes where ARW received treatment at the emergency room for "difficulty breathing" demonstrate that ARW actually suffered an "asthma attack" as defined by Listing 3.00C because most of the records do not reflect ARW as having suffered from "prolonged symptomatic episodes

9

lasting one or more days." Nor do they reflect ARW receiving the types of "intensive treatment" contemplated by the Listing. *See id.*, Listing 3.00C.

Furthermore, the ALJ's finding -- that the Listing for asthma was neither met nor functionally equaled -- is supported by the treatment records themselves. For instance, when ARW was taken to the emergency room on December 8, 2004 for "difficulty breathing," the attending physician reported that ARW "has a history of well-controlled asthma and has only used her albuterol inhaler twice over the last six months" and only experienced shortness of breath when "she was outside exercising in the cold weather...." Tr. 429. In July 2005, a spirometry examination showed only mild obstruction. Tr. 339. When ARW was taken to the emergency room in May 2007 after complaining of difficulty breathing, the examination revealed no "definite wheezing" and a normal chest x-ray; ARW was given aerosols and discharged. Tr. 506-08. Furthermore, the administrative record is devoid of hospital records any point in 2008, including and up to the day of the hearing on September 8, 2008. *See* tr. 17.

ARW's breathing problems do not appear to have been any worse when she was younger. For instance, when ARW was seen in the emergency room on January 4, 2000, for shortness of breath, the attending physician reported no objective finding of respiratory difficulty or respiratory distress. Tr. 474-78. At an October 9, 2001 visit to Gary Mueller, M.D., Plaintiff told Dr. Mueller that she had taken ARW to the emergency room 146 times for breathing issues, but there had been no hospitalizations. Tr. 371. Dr. Mueller also noted that ARW's "[p]ulmonary function tests today do demonstrate a very mild obstructive impairment with bronchodilator responsiveness." *Id.* During two emergency room visits for shortness of breath in May 2002, a lung x-ray was normal. Tr. 190. The emergency room physician noted that testing showed no obvious asthma, and further noted that

his examination suggested that ARW was intentionally wheezing. Tr. 187-91. ARW was diagnosed with a questionable acute exacerbation of asthma, and the attending physician made differential diagnoses of "school avoidance syndrome" and "Munchausen by Proxy."[3] *Id.*

In July 2002, after going to the hospital for complaints of shortness of breath, ARW was found only to have "slight" wheezing and was diagnosed with asthmatic bronchitis. Tr. 182-83. In August 2002, the Pulmonary Diagnostics Laboratory at Children's Medical Center found ARW's spirometry test to be normal. Tr. 366. In July 2003, ARW was taken to the emergency room for the second time in a period of four days for complaints of difficulty breathing, but the attending physician reported that she "does not appear to be in any respiratory distress." Tr. 432.

In addition to the records provided by ARW, the ALJ considered the reports of the two state agency consultants, Kamala Saxena, M.D., and N.J. Schear, MD., and accorded "great weight" to their findings that ARW "had a severe impairment of asthma, but it did not meet or equal the severity of any listed impairment." Tr. 17-18. The reviewing physicians found no limitation in the other five domains of 20 C.F.R. § 416.926a(b)(1). *See* tr. 253-54.

Ultimately, the ALJ found that ARW had no limitations in five of the six domains of function under 20 C.F.R. § 416.926a(b)(1), and only mild limitation in the sixth domain -- health and physical well-being. In his decision, the ALJ opined "[t]he results of significant testing and physical examinations have been discussed herein above at Step/Finding 3, and they present a picture of an

---

[3]Munchausen syndrome by Proxy is a disorder in which "an individual produces or feigns physical or emotional symptoms in another person under his or her care. Usually the victim is a young child, and the person producing the symptoms may be the child's parent or caretaker, most often the mother." American Medical Association, COMPLETE MEDICAL ENCYCLOPEDIA 870 (Jerrold B. Leikin & Martin S. Lipsky eds. 2003); *see also* Thomas Lathrop Stedman, STEDMAN'S MEDICAL DICTIONARY 1906 (28th ed. 2006).

essentially healthy child. Both the claimant's severe impairments have been described as 'mild' when diagnosed by her physicians." Tr. 18.

Based upon the foregoing, the Court finds that the ALJ's decision is unquestionably supported by substantial evidence. Additionally, given the content of the medical records, the opinions of the reviewing physicians, and the testimony presented at the hearing -- which revealed that ARW's scoliosis and asthma do not interfere with her ability to stand on her feet for up to six hours at a time, go to the mall, visit friends and family, maintain a regular schedule with respect to her studies, help with household chores, or engage in physical activities such as roller skating and walking in the park -- the ALJ did not err in finding that ARW "has less than marked limitation in health and well being" or that ARW is not "disabled," and his findings are clearly supported by the record. Tr. 18-22, 566-78. The ALJ's findings are a fair assessment of the evidence, and they are consistent with the medical experts' opinions in the record. Moreover, in light of the deference inherent in our standard of review, the ALJ's finding -- that there was no functional equivalence to a Listing -- is also supported by substantial evidence. Therefore, it is the recommendation of the Court that the Commissioner's denial of SSI benefits should be affirmed.

## V. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignment of error is without merit.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability determination be AFFIRMED; and

2. The case be terminated on the docket of this Court.

November 14, 2011

                                                                                          s/ **Michael J. Newman**
                                                                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).